1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

SUSAN CASSERD,

9

Plaintiff,

10

v.

11

CAROLYN W. COLVIN, Commissioner of
Social Security,

12

Defendant.

13

Case No. C14-451-RAJ-BAT

**REPORT AND
RECOMMENDATION**

14     Susan Ann Casserd seeks review of the denial of her Disability Insurance Benefits

15  application.  She contends the ALJ erred by improperly rejecting her testimony, and rejecting the

16  medical opinions of Dr. Arne Anderson, M.D., and Dr. Marie Boudreaux, M.D.  Dkt. 14.  As

17  discussed below, the Court recommends the Commissioner's decision be **AFFIRMED** and this

18  case be **DISMISSED** with prejudice.

19                                      **BACKGROUND**

20     Ms. Casserd is currently 57 years old, has at least a high school education, and has

21  worked as a personnel clerk, receptionist, personal life coach, and file clerk.  Tr. 46, 85-86, 119.

22  On November 12, 2010, she applied for benefits, alleging disability as of December 1, 2009.  Tr.

23  18.  Her applications were denied initially and on reconsideration.  *Id*.  The ALJ conducted a

REPORT AND RECOMMENDATION - 1

1 hearing on January 6, 2012, finding Ms. Casserd not disabled.  Tr. 18-33.  As the Appeals

2 Council denied Ms. Casserd's request for review, the ALJ's decision is the Commissioner's final

3 decision.  Tr. 1-6.

## THE ALJ'S DECISION

5  Utilizing the five-step disability evaluation process,[1] the ALJ found:

6  **Step one:**  Ms. Casserd had not engaged in substantial gainful activity since April 1,
   2009, the amended alleged onset date.

7
   **Step two:**  Ms. Casserd had the following severe impairments: degenerative disc disease
8  of the lumbar spine, status/post two surgical interventions, heel valgus bilaterally and
   hallux valgus on the right, status/post bilateral bunionectomies, major depressive
9  disorder, and anxiety disorder NOS.

10  **Step three:**  These impairments did not meet or equal the requirements of a listed
    impairment.[2]

11
    **Residual Functional Capacity:**  Ms. Casserd had the residual functional capacity to
12  perform work as follows: she could lift and carry ten pounds occasionally and frequently;
    stand and/or walk two hours in an eight-hour workday; she must have the option to sit or
13  stand at will; she cannot climb ladders, rope, or scaffolding, and can occasionally climb
    ramps or stairs; she can understand, remember, and perform at least three-step
14  instructions; and she can interact appropriately with coworkers, supervisors, and
    members of the public.

15
    **Step four:**  Ms. Casserd could perform her past work as personnel clerk and reception
16  clerk, as they are generally performed and as Ms. Casserd actually performed them.

17 Tr. 18-33.

## DISCUSSION

18
**A.    The ALJ Did Not Err in Evaluating Ms. Casserd's Credibility**
19
    **1.    *Relevant Standard***
20
    Ms. Casserd contends the ALJ erred in her adverse credibility determination because she
21
failed to provide "clear and convincing" reasons for rejecting her testimony.  Dkt. 14 at 6.  The
22

---

23 [1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

REPORT AND RECOMMENDATION - 2

1   Commissioner disagrees, arguing that the Social Security Administration's ("Agency") rules at

2   most require substantial evidence.  (*citing Monjaraz-Munoz v. INS*, 327 F.3d 892, 895 (9th Cir.

3   2003)).  Dkt. 15 at 2.  The Commissioner's position is foreclosed as contrary to Ninth Circuit

4   precedent.  This Circuit has

5           consistently held that where the record includes objective medical
            evidence establishing that the claimant suffers from an impairment
6           that could reasonably produce the symptoms of which [she]
            complains, an adverse credibility finding must be based on "'clear
7           and convincing reasons.'"  *Lingenfelter v. Astrue*, 504 F.3d 1028,
            1036 (9th Cir.2007) (*quoting Smolen v. Chater*, 80 F.3d 1273,
8           1281 (9th Cir.1996)).  The only time this standard does not apply is
            when there is affirmative evidence that the claimant is malingering.
9           *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir.2006); *Morgan v.
            Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir.1999).
10
    *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008).  Moreover, the
11
    Ninth Circuit recently denied the Agency's attempts to undermine the clear and convincing
12
    standard, stating the suggestion "lacks any support in precedent and must be rejected."  *Garrison*
13
    *v. Colvin*, No. 12-15103, 2014 WL 3397218 at *16, n.18 (9th Cir. July 14, 2014) (rejecting
14
    Agency's argument that the Court should apply a standard lower than clear and convincing in
15
    reviewing ALJ's evaluation of claimant's testimony where there was no evidence of
16
    malingering).  This Court is bound by the law of the Ninth Circuit.  Accordingly, the Court finds
17
    that the ALJ's adverse credibility determination must be based on clear and convincing reasons.
18
            **2.      *Inconsistency with the Medical Record***
19
            The ALJ discounted Ms. Casserd's credibility because her medical records were
20
    inconsistent with her testimony of debilitating pain and exertional limitations.  Tr. 25.  Medical
21
    evidence is a relevant factor in determining the severity of a claimant's pain and its disabling
22
    effects.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); SSR 96-7p.  "Contradiction
23
    with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."

REPORT AND RECOMMENDATION - 3

1   *Carmickle*, 533 F.3d at 1161; *see also Rollins*, 261 F.3d at 857 ("[s]ubjective pain testimony

2   cannot be rejected on the sole ground that it is not fully corroborated by objective medical

3   evidence.").

4          In this case, the ALJ summarized Ms. Casserd's medical record as follows:  Ms. Casserd

5   had multiple surgeries in 2004 for a decompressive laminectomy with subsequent dural repair

6   and repair of a pseudomeningocele; MRIs showing hypertrophy at L4-L5 with stenosis at L3-L4

7   in 2005; and continued pain with good range of motion in her back and negative straight leg

8   raises in 2006.  Tr. 25-26.  In 2009, she had pain and fatigue but no weakness or sleep

9   interruption; limited range of motion in her lumbar spine; and normal strength, reflexes and

10  sensation in her lower extremities; however, an x-ray showed arthritis in her lumbar spine with

11  slight scoliosis at L3 and slight subluxation between L4 and L5.  *Id.*  A 2009 MRI showed

12  "grossly preserved vertebral heights with degenerative changes at all levels"; mild disc bulges at

13  L1-L2, L2-L3, and L3-L4; mild to moderate central canal narrowing at L2-L3; moderate central

14  and foraminal narrowing at L3-L4; and moderate to severe central and foraminal narrowing at

15  L4-L5.  Tr. 26.  In subsequent examinations, Ms. Casserd displayed normal gait and full motor

16  strength in her lower extremities; her reflexes were normal; she had normal range of motion, a

17  steady gait, negative straight leg raises and negative Romberg tests; but she continued to describe

18  lower back pain, stiffness and soreness.  *Id.*

19         The ALJ fails to explain why the medical findings she summarized were inconsistent

20  with Ms. Casserd's testimony of debilitating pain, or why she found the medical history "appears

21  to have no significant barrier to sedentary work besides her own belief that her pain precludes

22  such activity."  Tr. 27.  On this record, the Court cannot say the ALJ provided clear and

23  convincing reasons for finding Ms. Casserd's description of pain not credible.  Not only did the

REPORT AND RECOMMENDATION - 4

1   ALJ fail to provide *any* reasoning in linking the medical evidence to her conclusions, but it is

2   entirely unclear as to how the objective medical evidence does not in fact corroborate Ms.

3   Casserd's allegations.  *See Rollins*, 261 F.3d at 857.  The finding is unsupported in the record

4   and contradicted by record evidence.[3]

5   **3.   *Inconsistent Daily Activities***

6   At her hearing, Ms. Casserd testified she could not stand or sit for two hours due to hip,

7   knee, foot, and back pain without significant need for recovery.  Tr. 51.  She testified her ideal

8   job would be one where she could work from home and could lie down.  Tr. 52.  She also

9   testified she cannot drive because sitting in the car is too painful, she cannot lift more than ten

10  pounds at a time, and that she takes pain medication every day.  Tr. 57, 62-64.  She further

11  testified she cares for a dog, cat, and two horses; she swims once per week; rides her horse every

12  1-2 weeks for thirty to ninety minutes; shops for groceries; and occasionally rides a bike for ten

13  minutes at a time.  Tr. 61-62, 64-68, 70.  In a February 11, 2011 Function Report, Ms. Casserd

14  reported that her "chronic health conditions severely limit what [she] can do."  Tr. 270.  She

15  reported severe back pain made her unable to drive, sit, stand, or walk.  Tr. 263 ("I'm unable to

16  drive, sit or stand still [*illegible*] fibromyalgia"), 268 ("I'm in so much pain I can't tolerate

17  situations where I have to sit, drive, stand still or type.").  She indicated she can drive only 1-2

18  times per week, and for thirty minutes at a time, with pain, and that she shops for groceries once

19  per week for one hour.  Tr. 266.  She also reported that her medications made it hard for her to

20

21  _____

22  [3] The Court notes that, in her section regarding Ms. Casserd's credibility, the ALJ also discusses
    Ms. Casserd's psychological findings and concludes her "mental impairments do not impose
    significant barriers to working."  Tr. 26-27.  It appears these findings are better suited to a

23  discussion at step two because there is no discussion that is relevant to Ms. Casserd's credibility.
    Accordingly, the Court does not address the matter in that context.

1   concentrate, and that she could only pay attention for one minute.  Tr. 268.[4]

2   　　　The ALJ found Ms. Casserd's testimony not credible because her complaints of disabling

3   symptoms and limitations were inconsistent with her daily activities.  Tr. 27.  Specifically, the

4   ALJ found Ms. Casserd's descriptions of feeding and caring for two horses, riding one horse

5   every other week, making her own meals, grocery shopping, swimming, and occasionally riding

6   bicycles, was contrary to her complaints.  *Id.*

7   　　　The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried

8   on certain daily activities, such as grocery shopping, driving a car, or limited walking for

9   exercise, does not in any way detract from her credibility as to her overall disability.  One does

10  not need to be 'utterly incapacitated' in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044,

11  1050 (9th Cir. 2001) (*quoting Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).  However, a

12  claimant's reported daily activities can form the basis for an adverse credibility determination if

13  they consist of activities that contradict the claimant's "other testimony"; or that are transferable

14  to a work setting." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *Smolen v. Chater*, 80 F.3d

15  1273, 1284  n.7 (9th Cir. 1996); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)

16  ("Only if the level of activity were inconsistent with Claimant's claimed limitations would these

17  activities have any bearing on Claimant's credibility").

18  　　　The ALJ's adverse credibility determination was not erroneous, because Ms. Casserd's

19  daily activities contradict her testimony regarding her disabling pain and limitations.  The

20  activities Ms. Casserd described are inconsistent with her allegations that she is unable to tolerate

---

21  [4] In her briefing, Ms. Casserd attempts to retreat from the severity of the physical limitations she
    endorsed at her hearing and in her function report, arguing instead that she cannot sit for six
22  hours as contemplated in the definition of sedentary work, or that she cannot sit "for more than
    four hours in an 8 hour workday." *See* Dkt. 14 at 8, 11, 14, 18.  In evaluating the ALJ's
23  credibility determination, however, the Court's inquiry is limited to the record before the
    Commissioner, not Ms. Casserd's revised testimony as presented in her briefing.

REPORT AND RECOMMENDATION - 6

1   situations where she has to sit, drive, or stand still due to pain in her back, knees, hips, and feet.

2        Ms. Casserd's activities of daily living are similar to those in *Vertigan,* who went to the

3   grocery store, shopped, walked about an hour, got together with friends, played cards, read,

4   swam, watched television, did physical therapy, and exercised.  *Vertigan*, 260 F.3d. at 1049-50.

5   In *Vertigan*, the Court reversed the ALJ's adverse credibility determination, finding only a

6   scintilla of evidence supported the ALJ's conclusion that the claimant lacked credibility about

7   her pain.  *Id.*  In this case, Ms. Casserd's activities are clearly inconsistent with her claimed

8   limitations.  It was not unreasonable for the ALJ to find Ms. Casserd's daily activities

9   irreconcilable with her testimony stating she was "unable to," or "couldn't tolerate," sitting,

10  driving, walking, or standing.

11       But even if the Court were to find Ms. Casserd's minimal activities of shopping,

12  preparing simple meals, and minimal exercise such as walking, swimming and riding a bike for

13  short amounts of time were consistent with her testimony regarding physical limitations and

14  pain, the Court cannot say the ALJ erred in finding riding horses for 30 to 90 minutes at a time

15  was inconsistent with her alleged limitations and pain.  Although Ms. Casserd's explanation that

16  her horseback riding was for therapeutic purposes may be a reasonable interpretation of the

17  record, the ALJ's conclusion was also reasonable.  "Where the evidence is susceptible to more

18  than one rational interpretation, it is the ALJ's conclusion that must be upheld."  *Morgan v.*

19  *Comm'r, Soc. Sec. Admin*., 169 F.3d 595, 599 (9th Cir. 1999) (*citing Andrews*, 53 F.3d at 1041).

20       In short, the ALJ provided clear and convincing reasons supported by substantial

21  evidence in the record to discount Ms. Casserd's credibility on the basis of her inconsistent daily

22  activities.

23       **4.**      ***Psychological cause of pain***

REPORT AND RECOMMENDATION - 7

1    The Court finds the ALJ's final reason for her adverse credibility determination

2  perplexing and lacking in logic, and therefore not clear and convincing.  The ALJ asserts Ms.

3  Casserd's only barrier to sedentary work is her own belief that her pain precludes her from such

4  activity.  Tr. 27.  In this example, the ALJ bases the statement on the "recommendations of

5  rehabilitative consultant Dr. Boudreaux."  *Id*.  The ALJ notes that Dr. Boudreaux "recommended

6  that the claimant begin an occupational conditioning program, in which the claimant would

7  condition herself over time to tolerate gainful employment."  Tr. 27.  The ALJ presents no

8  conclusions flowing from this statement and the Court declines to speculate as to what they may

9  be.

10    The ALJ then suggests Ms. Casserd's pain is "non-physiologic."  *See* Tr. 27 ("In July

11  2011, she requested an increase to her previous [opiate] dosage level, stating that a recent bout of

12  depression was causing her additional pain.  Her claim that her depression is a contributory cause

13  of musculoskeletal pain is demonstrative of the non-physiologic nature of the claimant's pain

14  complaints.").  The ALJ asserts:

15    [a]s discussed above, the claimant's PAI has shown an elevated
      somatization scale, as well as a self-image that is largely
16    influenced by a belief that she is handicapped (11F).  In summary,
      although I find that the claimant's pain and opiate use does likely
17    impaired [*sic*] her concentration to a moderate degree, the
      claimant's medical record and reported activities do not support
18    the claimant's firmly held belief that she is unable to work on a
      full-time basis due to pain and musculoskeletal dysfunction.

19
   Tr. 28.
20
      The ALJ's statements betray her flawed belief that pain symptoms without discrete
21
   physical causes cannot be medically valid.  The ALJ's logic is erroneous and implicates her
22
   analysis at other steps of the five-step evaluation process. At step two, the ALJ discussed
23
   fibromyalgia, noting Dr. Boudreaux "suggested a diagnosis," but ultimately found the

REPORT AND RECOMMENDATION - 8

1   impairment was not medically established.  Tr. 22.  Dr. Boudreaux, among others, also

2   diagnosed chronic pain.  Tr. 358.  The ALJ does not consider chronic pain at step two.  Ms.

3   Casserd's medical records are rife with complaints of pain, with evidence suggesting "many

4   visits" for pain since 2000.  *Id.*  At a minimum, the record supports a finding that Ms. Casserd's

5   pain has multiple sources — perhaps both physical and psychological — but the fact that pain

6   has multiple sources does not invalidate it, or Ms. Casserd's credibility.[5]  On the other hand, if

7   the ALJ is simply trying to reiterate her belief that Ms. Casserd's activity level belies her

8   complaints of pain — which is, to be sure, unclear — she fails.  There is simply no logic in

9   proving the point by stating pain symptoms are non-physiologic in nature, because the

10  observation only suggests the pain is present with or without physical activity, not that the level

11  of physical activity proves an absence of pain.  Accordingly, as far as the Court can tell, the

12  ALJ's final argument adds nothing beyond her attempt to discredit Ms. Casserd's credibility for

13  the other reasons discussed above.

14      Because some of the ALJ's reasons supporting her adverse credibility finding are invalid,

15  the Court must determine whether the ALJ's reliance on them was harmless error.  The inclusion

16  of improper reasons among other proper reasons to discount a claimant's credibility does not

17  "'negate the validity'" of the ALJ's credibility determination.  *Carmickle*, 533 F.3d at 1163

18  (*quoting Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1197) (9th Cir. 2004)).  An error is

19  harmless where the ALJ's remaining reasoning and ultimate credibility determination are

20  adequately supported by substantial evidence in the record.  *Id.* at 1162-63.  Here, the ALJ's

21  decision to discount Ms. Casserd's credibility is supported by a valid reason and substantial

22  evidence in the record.  The Court thus concludes the ALJ's error is harmless and will not disturb

23  _____

[5] The Court notes that neither the ALJ, nor the record, suggest evidence of malingering.

REPORT AND RECOMMENDATION - 9

1   the her assessment of Ms. Casserd's credibility.

2   **B.     The ALJ Did Not Err in Evaluating the Medical Opinion Evidence**

3         Ms. Casserd next argues the ALJ erred in discounting the opinions of treating doctor

4   Arne Anderson, M.D., and examining doctor Marie Boudreaux, M.D.  "Although a treating

5   physician's opinion is generally afforded the greatest weight in disability cases, it is not binding

6   on an ALJ with respect to the existence of an impairment or the ultimate determination of

7   disability."  When a treating or examining doctor's opinion is not contradicted by another doctor,

8   the ALJ may reject the opinion only for "clear and convincing" reasons.  *Lester v. Chater*, 81

9   F.3d 821, 830 (9th Cir. 1988).  Where a treating or examining doctor's opinion is contradicted by

10  that of another doctor, it may not be rejected without "specific and legitimate reasons based on

11  substantial evidence in the record."  *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

12  "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and

13  conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Magallanes v.*

14  *Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *accord Andrews*, 53 F.3d at 1043.  Rather than merely

15  stating his conclusions, the ALJ "must set forth his own interpretations and explain why they, rather

16  than the doctors', are correct."  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation

17  omitted).

18       **1.     *Arne Anderson, M.D.***

19        Ms. Casserd challenges the ALJ's rejection of a January 2012 Medical Source Statement

20  by Arne Anderson, M.D.  Dkt. 14 at 13-18.  Dr. Anderson opined Ms. Casserd could

21  occasionally lift up to 20 pounds but could not frequently lift any weight; she could

22  sit/stand/walk for 30 minutes without interruption and for a total of three hours in an 8-hour

23  workday (and would otherwise need to lay down); she could occasionally reach, handle, finger,

REPORT AND RECOMMENDATION - 10

1   feel and push/pull with either hand; she could occasionally operate foot controls; she could never

2   climb or balance but could occasionally engage in other postural activities; and she could never

3   tolerate unprotected heights or operate a motor vehicle but could occasionally tolerate vibrations

4   and moving mechanical parts.  Tr. 637-42.  Dr. Anderson also opined Ms. Casserd could shop,

5   travel without assistance, ambulate without a wheelchair, walk a block at a reasonable pace,

6   climb a few steps, prepare simple meals, and deal with paper files.  Tr. 642.

7       The ALJ found the opinion was insufficiently supported by the doctor's findings and

8   other findings in the medical record and thus appeared to be based on Ms. Casserd's subjective

9   complaints; it was internally inconsistent, it was inconsistent with Ms. Casserd's daily activities,

10   and Dr. Anderson was improperly advocating for Ms. Casserd; accordingly, she assigned the

11   opinion "little weight."  Tr. 31.

12       A treating physician's opinion need not be given controlling weight when it is

13   "conclusory, brief, and unsupported by the record as a whole . . . or by objective medical

14   findings." *Batson,* 359 F.3d at 1195.  The ALJ found Dr. Anderson's opined limitations were

15   implausible because evidence of Ms. Casserd's physical examinations (including one by Dr.

16   Anderson in 2010) demonstrated she had normal range of motion, sensation, and reflexes; and

17   full range of motion in her lumbar spine.  Tr. 31 (*citing* Tr. 382, 388, 604, 624, 643-49).  The

18   Court notes that two of the examinations relied upon by the ALJ predate Ms. Casserd's alleged

19   onset date by 3-5 years.  *See* Tr. 604, 624.  Evidence that predates the alleged period of disability

20   is of limited relevance.  *Carmickle*, 533 F.3d at 1165.  Permitting the use of evidence predating

21   disability would, in most cases, conflict with evidence after a disability onset date and would

22   merely invite abuse.

23       As Ms. Casserd observes, the ALJ errs in linking, without explanation, range of motion

REPORT AND RECOMMENDATION - 11

1    findings with exertional limitations such as standing/walking/sitting and lifting/carrying.  *See*

2    Dkt. 14 at 4.  Additionally, the evidence the ALJ relies upon indicates Ms. Casserd stood during

3    her exams, further supporting her allegations regarding sitting limitations.  *See* Tr. 388 ("stands

4    through most of the visit"); *see also* Tr. 652 ("She stands in the waiting room and only sits

5    briefly during the examination.").  Further, Dr. Anderson's 2012 opinion was not based on his

6    findings regarding strength, reflexes, and range of motion.  Rather, the opinion was based upon

7    imaging showing "post surgical and degenerative changes at L3-4 and L4-5."[6]  Tr. 637-42.

8    Accordingly, the ALJ's assertion that Dr. Anderson's opinion "provide[s] no examination

9    findings or other evidence as support" is also not supported by substantial evidence.  *See* Tr. 31.

10   An ALJ's decision will be overturned "only if it is not supported by substantial evidence or is

11   based on legal error."  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  In this case, the

12   ALJ erred in rejecting Dr. Anderson's opinion as inconsistent with his examination findings and

13   the examination findings of other doctors, and there is nothing to suggest Dr. Anderson

14   improperly relied solely upon Ms. Casserd's subjective complaints.

15         The ALJ also erred when she concluded Dr. Anderson had been acting as an advocate

16   "for a finding of disability."  Tr. 31.  Although the opinions may be favorable to Ms. Casserd,

17   there is no evidence of actual impropriety.  *See Lester*, 81 F.3d at 832 (*quoting Ratto v. Sec'y, Dept.*

18   *of Health and Human Servs*., 839 F.Supp. 1415, 1426 (D.Or.1993)) ("The Secretary may not assume

19   that doctors routinely lie in order to help their patients collect disability benefits."); *see, also, Nguyen*

20   *v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (*citing Saelee v. Chater*, 94 F.3d 520, 523 (9th Cir.

21   _____

22   [6] In December 2011, Dr. Anderson stated "MRI scanning of the lumbar spine demonstrates postoperative changes and additional lumbar spondylosis with stenosis.  This was done in 2009[. R]ecent x-rays show that she has some spondylolisthesis at L4-5 and L5-S1."  Tr. 634.  This

23   supports the conclusion that Dr. Anderson relied upon an MRI, rather than, as the ALJ contends, examination findings.

REPORT AND RECOMMENDATION - 12

1996)) (the source of report is a factor that justifies rejection only if there is evidence of actual impropriety or no medical basis for opinion).  The ALJ points to a February 2011 email chain between Ms. Casserd and Dr. Anderson, wherein the doctor agrees, at the request of Ms. Casserd, to fill out disability paperwork on her behalf.  Dr. Anderson cautions, however, that she "typically put[s] people at capable of some activity so I would not say you are totally disabled but at the next category up."  Tr. 559.  The ALJ found this statement inconsistent with Dr. Anderson's opinions, and from that, concluded Dr. Anderson had been improperly acting as an advocate.  Tr. 31.  Evidence demonstrating the doctor did not intend to find Ms. Casserd incapable of all activity is not evidence of "actual impropriety."  The ALJ's conclusion is nothing more than speculation.

Finally, the ALJ found Dr. Anderson's medical source statement internally inconsistent because, although he opined Ms. Casserd could never balance, operate a motor vehicle, or sit/stand/walk for more than 30 minutes, the doctor also opined she could travel without assistance, perform her own shopping, and ambulate without an assistive device.  Tr. 31.  An ALJ may properly consider internal inconsistencies within and between a physician's reports. *Morgan*, 169 F.3d at 603.  In challenging the ALJ's finding, Ms. Casserd argues the definition of "never" includes any amount of time up to 1/3 of an eight-hour workday, so "when Dr. Anderson opined that Plaintiff was supposedly 'never' able to operate a motor vehicle, he was actually saying that he did not believe Plaintiff was capable of operating a motor vehicle during as much as one third of the time."  Dkt. 14 at 15.  The argument is belied by the evidence. "Occasionally," as defined in the form completed by Dr. Anderson, includes "very little to one-third of the time."  Tr. 637.  Thus, "never" must be less than "very little," *i.e.,* none.  Even if Ms. Casserd's interpretation of this record was reasonable, the ALJ's was also reasonable. Accordingly, it must be upheld.  *See Morgan*, 169 F.3d at 599.

REPORT AND RECOMMENDATION - 13

1    Although the ALJ's treatment of Ms. Casserd's credibility is not error-free, the Court

2    finds any error would not negate the validity of the overall credibility determination and thus is

3    harmless.  *See Carmickle*, 533 F.3d at 1162, 1163 n.4 (the key issue is "whether the ALJ's

4    underlying decision remains supported, in spite of any error, and not whether the ALJ would

5    necessarily reach the same result on remand.").  Thus, the Court recommends affirming the

6    ALJ's evaluation of Dr. Anderson's opinion.

7         **2.        *Marie Boudreaux, M.D.***

8         Ms. Casserd next challenges the ALJ's rejection of the March 2011 opinion of examining

9    doctor Marie Boudreaux, M.D.  Dr. Boudreaux opined Ms. Casserd was capable of lifting up to

10   ten pounds; she could stand and walk for less than two hours in an eight-hour day; she could sit

11   for less than four hours per day when alternating between sitting and standing; she could never

12   climb, balance, stoop, crouch, kneel or crawl; and she had limited reaching ability.  Tr. 471-75.

13   She based her opinions on Ms. Casserd's history of pain and current pain, and her self-reports.

14   *Id.*  The ALJ accepted the finding that Ms. Casserd could not lift and carry over ten pounds on a

15   regular basis, but assigned "limited weight" to the remainder of Dr. Boudreaux's opinion

16   because she did not find Ms. Casserd's self-reports of physical limitations to be credible.  Tr. 29.

17   The Commissioner contends an ALJ properly rejects an opinion based to a large extent on self-

18   reports that were properly found not credible.  Dkt. 15 at 7, 10 (*citing Tommasetti v. Astrue*, 533

19   F.3d 1035, 1041 (9th Cir. 2008)).  The Court agrees.  As discussed above, the ALJ properly

20   discounted Ms. Casserd's testimony.  Accordingly, the Court recommends affirming the ALJ's

21   evaluation of the opinion of Dr. Boudreaux.

22                                **CONCLUSION**

23        For the foregoing reasons, the Court recommends that the Commissioner's decision be

REPORT AND RECOMMENDATION - 14

1   **AFFIRMED** and recommends the case be **DISMISSED** with prejudice.

2          A proposed order accompanies this Report and Recommendation.  Objections, if any, to

3   this Report and Recommendation must be filed and served no later than **September 2, 2014**.  If

4   no objections are filed, the matter will be ready for the Court's consideration on **September 3,**

5   **2014**.  If objections are filed, any response is due within 14 days after being served with the

6   objections.  A party filing an objection must note the matter for the Court's consideration 14

7   days from the date the objection is filed and served.  Objections and responses shall not exceed

8   twelve pages.  The failure to timely object may affect the right to appeal.

9          DATED this 18th day of August, 2014.

10

11

12

13          BRIAN A. TSUCHIDA
            United States Magistrate Judge

14

15

16

17

18

19

20

21

22

23

REPORT AND RECOMMENDATION - 15