HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SUSAN CASSERD,

   Plaintiff,

  v.

CAROLYN W. COLVIN, in her capacity
as Acting Commissioner of the Social
Security Administration,

   Defendant.

CASE NO. C14-451RAJ

ORDER

## I.  INTRODUCTION

 This matter comes before the court on the Report and Recommendation ("R&R") (Dkt. # 19) of the Honorable Brian A. Tsuchida, United States Magistrate Judge.  The court has considered the R&R, the briefs the parties submitted to Judge Tsuchida, and the Administrative Record ("AR").  For the reasons stated below, the court DECLINES TO ADOPT the ultimate recommendation of the R&R, REVERSES the July 27, 2012 decision of the administrative law judge ("ALJ"), and REMANDS this action to the Social Security Administration ("SSA") with instructions to award disability benefits for a disability beginning on April 1, 2009.  The clerk shall enter judgment for Plaintiff.

## II.  BACKGROUND

 No one disputes that Plaintiff Susan Casserd suffers chronic back pain following two surgeries in 2004 that she hoped would remedy back pain she experienced before the surgeries.  The dispute before the court is to what extent Ms. Casserd's pain is disabling.

ORDER – 1

After a January 2012 hearing, an ALJ determined that Ms. Casserd's pain would not prevent her from performing her past relevant work, and that she was therefore not disabled. The ALJ could not have reached that determination by relying on evidence from Ms. Casserd, because she has reported consistently since at least 2009 that her pain prevents her from sitting for more than 20 to 30 minutes at a time, that even that much sitting requires at least a day of recovery, and that she is therefore unable to work. The physicians whom Ms. Casserd saw regularly from 2009 to 2011 do not suggest that she is exaggerating her pain or that her pain is inexplicable in light of objective medical findings. The only evidence in the record that contradicts Ms. Casserd's reporting are two evaluations: one from a physician who never examined Ms. Casserd, and another from a physician who examined her once and produced a report that even the ALJ declined to give much weight. The ALJ nonetheless concluded that Ms. Casserd's account of the debilitating effect of her pain was not credible, that her treating physicians were not credible (in large part because they believed Ms. Casserd), and that the physician who never examined Ms. Casserd gave the most accurate version of her residual functional capacity ("RFC").

Ms. Casserd appealed. The R&R points to a number of errors in the ALJ's determination: there was not sufficient evidence to discredit Ms. Casserd, that the ALJ had neither a basis to determine that Ms. Casserd's pain was purely psychological nor to discount the debilitating effect of her pain on that basis, and that the ALJ had offered invalid reasons for discounting the views of her treating physicians. The R&R concludes, however, that the ALJ did not err in disbelieving Ms. Casserd because her reports about the disabling effect of her pain were inconsistent with her reported daily activities. For the same reason, the R&R finds no error in the ALJ's decision to discount the testimony of Ms. Casserd's treating physicians, who believed her account of her pain. The R&R also found no error in the R&R's conclusion that one of Ms. Casserd's treating

ORDER – 2

physicians reached an RFC determination that was internally inconsistent.  For those reasons, Judge Tsuchida recommends that the court affirm the ALJ's decision.

No one objected to the R&R.

## III.   ANALYSIS

### A.    Standard of Review

Although no party has objected to the R&R, the court will review it de novo.  Rule 72(b)(3) of the Federal Rules of Civil Procedure, which applies to a magistrate judge's recommended disposition of a dispositive matter, mandates de novo review of "any part of the magistrate judge's [recommended] disposition that has been properly objected to." The Federal Magistrates Act similarly declares that for dispositive recommendations from magistrates, a district court judge "shall make a de novo recommendation of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1).  Both Rule 72 and the Magistrates Act are silent as to what standard of review applies to a magistrate's recommended disposition when no party objects to it.  The Supreme Court has stated that although the Magistrates Act "does not require the judge to review an issue de novo if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard."  *Thomas v. Arn*, 474 U.S. 140, 154 (1985) (noting that district court judge had conducted de novo review of magistrate judge's proposed disposition of a habeas petition even though no party had objected).[1]  The

---

[1] The court acknowledges Ninth Circuit authority mandating that a district court conduct de novo review of legal conclusions in a magistrate judge's dispositive recommendation even if no party objects.  *Barilla v. Ervin*, 886 F.2d 1514, 1518 (9th Cir. 1989) ("[A] failure to file objections only relieves the trial court of its burden to give *de novo* review to factual findings; conclusions of law must still be reviewed *de novo*.).  *Barilla* concerned a magistrate's recommended disposition of a summary judgment motion, concluding that because the decision to grant summary judgment is "purely legal," de novo review was mandatory.  *Id.*  Later Ninth Circuit precedent is consistent with the Supreme Court's decision in *Thomas*.  *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) ("The statute makes it clear that the district judge must review the magistrate judge's findings and recommendations de novo if objection is made, but not otherwise.").  Because the court's disposition today is consistent with *Thomas*, *Reyna-Tapia*, and *Barilla*, the court need not resolve any tension between *Barilla* and *Reyna-Tapia* or determine whether *Barilla* is consistent with the Supreme Court's decision in *Thomas*.

ORDER – 3

Advisory Committee notes to Rule 72 declare as to a magistrate's dispositive recommendation that "[w]hen no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." As the court will discuss in the next subsection, the record in this case reveals clear error in the ALJ's decision.

Where "substantial evidence" supports an ALJ's factual finding, the court generally must affirm it. *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1222 (9th Cir. 2009) ("Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation omitted). In certain circumstances, such as when an ALJ rejects a claimant's testimony about the severity of her impairments, a higher standard applies. *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (requiring "specific, cogent reasons" for rejecting claimant's testimony, and "clear and convincing evidence" where there is no evidence of malingering). Similarly, an ALJ can reject the uncontradicted opinions of a treating or examining medical provider only where clear and convincing evidence supports that decision. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Even where medical evidence contradicts the opinion of a treating or examining provider, the "ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). The court does not defer to the ALJ's legal conclusions. *Bray*, 554 F.3d at 1222.

A five-step process determines whether an applicant is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). An applicant is disabled if, for a period of sufficient duration, she can perform neither her past relevant work nor any other work available in the national economy. In the first step, the applicant must show that she did not engage in substantial gainful activity during a relevant time period. If she did, then she is not disabled. If she did not, then the claimant must show at the second step that she has a "severe impairment" that limits her ability to work. 20 C.F.R. § 404.1520(c).

ORDER – 4

If so, she must show at the third step that over the course of at least a year, her impairment "meets or equals" an impairment listed in applicable regulations. If it does, she is disabled. If not, the ALJ must determine, between step three and step four, the applicant's RFC, which is an assessment of the applicant's "ability to work after accounting for her verifiable impairments." *Bray*, 554 F.3d at 1222-23. The applicant must demonstrate at step four that her RFC is such that she cannot perform her past relevant work. *See* 20 C.F.R. § 404.1520(f) (noting that an applicant who can perform past relevant work is not disabled). If she cannot, then the burden shifts to the SSA to demonstrate that her RFC permits her to perform other jobs that exist in substantial numbers in the national economy. *See Bray*, 554 F.3d at 1223 (describing allocation of burdens in five-step process).

In this case, the dispute arises at steps four and five. Ms. Casserd asserts that the evidence establishes an RFC more restrictive than the one that the ALJ developed, and that this more restrictive RFC does not permit her to work.

**B.     Review of Administrative Record**

To determine whether the ALJ drew permissible conclusions from the record as to Ms. Casserd's RFC, the court reviews the administrative record, focusing on evidence relevant to Ms. Casserd's back pain.[2] The court begins with evidence from Ms. Casserd's treating physicians.

**1.     Evidence From Treating Physicians**

The two physicians who treated Ms. Casserd most frequently were Dr. Arne Anderson, who specializes in "non-operative spine care," AR 642, and her family practitioner, Dr. Teresa Pliskowski. She saw both physicians frequently from 2009 to at least early 2012. She reported back pain every time she saw them. Although some of the

---

[2] Ms. Casserd claims exertional limitations arising from other physical conditions, as well as limited concentration as a result of her pain and depression. The court's disposition today does not require it to consider the ALJ's conclusions as to any condition other than Ms. Casserd's painful back.

ORDER – 5

physicians' notes regarding her reporting were more detailed than others, they reveal no inconsistencies. She reported to Dr. Anderson in June 2009 that she experienced "significant pain" if she sat for any length of time, and that sitting too long required "prolonged recovery for days or weeks afterward." AR 385. She noted that driving provoked her pain. AR 386. In the June 2009 visit with Dr. Pliskowski that preceded her visit with Dr. Anderson, she reported chronic back pain. AR 401. She reasserted previous reports of back pain to Dr. Anderson in October 2009, AR 381-82, and to Dr. Pliskowski in August 2010, AR 361. She consulted with Dr. Pliskowski about limiting her pain medication in April 2011. AR 541. She emailed Dr. Anderson and Dr. Pliskowski repeatedly in May 2011 because her pain left her unable to drive to a pharmacy to pick up pain medication. AR 523. She reported worsening pain to Dr. Pliskowski in July 2011. AR 515.

Because she continued to struggle with pain, she consulted Dr. Anderson in November 2011 about other treatment options. AR 500. In an email to Dr. Anderson in November 2011, she described her efforts to deal with pain at length. AR 493-95. She described attempts to strengthen her body with exercise and to reduce her use of medication, all of which resulted in "zero improvement in her ability to sit or stand still." AR 494. She described a then-recent incident when she drove 15 minutes to pick up her brother to attend a funeral, laid in the car while he drove for the remainder of the trip, stood throughout the service, laid in the car again on the return to her brother's home, then drove another 15 minutes. AR 494. That experience left her incapacitated for the remainder of the day and the following day. AR 494.

Although she saw other providers less frequently than Dr. Anderson and Dr. Pliskowski, her reports to them were consistent. She told a physician's assistant in April 2009 that back pain kept her from riding in a car or sitting for any extended period of time. AR 412. In October 2010, she reported to Dr. Marie Boudreaux, a rehabilitation specialist to whom Dr. Anderson had referred her, that sitting was the activity that caused

ORDER – 6

her the most pain.  AR 476.  She reported to a family practice physician in November 2011 that her pain made it difficult to drive.  AR 490.  The most encouraging report in the record is her February 2011 report to Dr. Boudreaux when she stated that she was now able to swim twice per week, and that the swim (plus the short drive to and from the pool) would only disable her for a day.  AR 550.  She nonetheless was unable to increase her tolerance for sitting.  AR 550.

At Ms. Casserd's request, Dr. Anderson submitted an evaluation to the SSA in January 2012.  AR 637-42.  He opined that she could not sit, stand, or walk for more than 20 to 30 minutes at time.  AR 638.  He opined that assuming she alternated between sitting, standing, or walking, she could perform those activities for no more than a combined 3 hours per day.  AR 638.  He also checked a box indicating that she could "[n]ever" drive.  AR 641.  A letter that Dr. Anderson wrote on Ms. Casserd's behalf in December 2011 reached the same conclusions, except as to her inability to drive. AR 633-34 ("Given the routine that she [has] described to me it seems very unlikely that she would be able to sustain a work presence of any significance.").

Dr. Boudreaux also drafted an evaluation of Ms. Casserd, albeit based only one examination at the request of Dr. Anderson.  AR 472.  Relying largely on Ms. Casserd's reporting, Dr. Boudreaux stated in March 2011 that she could stand or walk for less than 2 hours in a workday, and that even if she alternated between sitting and standing, she could do so for no more than 4 hours in a workday.  AR 473.

### 2.    Evidence From Ms. Casserd and Her Family

Ms. Casserd's own descriptions of her back pain mirror those reflected in her providers' notes.  She testified in her January 2012 hearing that she could no longer teach classes (which she had done in her most recent work as a life coach), because a two-hour class left her in debilitating pain for two or three days.  AR 50-51.  She testified that she currently makes a small amount of money coaching over the telephone, while lying on her back.  AR 52, 272.  In a September 2011 report she submitted to the SSA, she

ORDER – 7

explained that she drove at most twice per week, that she could drive for no more than 30 minutes at a time, and that it would take her 3 to 4 days to recover from a drive.  AR 266. She explored taking a real estate sales exam in May 2010, but requested accommodation to permit her to take the test while lying down.  AR 635.  Dr. Anderson signed that accommodation request.  AR 635.

Ms. Casserd's parents both declared that she does not sit for more than 20 minutes at a time.  AR 82-83, 255.

### 3.   Evidence from Non-Treating Physicians

The ALJ requested an additional medical examination to occur after the January 2012 hearing.  AR 18.  Dr. William Brendel conducted the examination in April 2012. He reviewed Dr. Boudreaux's October 2010 notes, the results of MRIs from 2004 and 2005, the report on her April 2004 back surgery, and no other records.  AR 650.  Ms. Casserd reported to him that "long trips, prolonged sitting, prolonged standing, and prolonged walking all make her back significantly worse for several days and then will gradually improve again.  AR 650.  He conducted a physical examination, AR 652-54, diagnosed her with conditions affecting her lower spine, and opined that had reached "maximal medical improvement related to her low back symptoms."  AR 654.  He opined that Ms. Casserd could lift and carry up to 20 pounds without limitation, AR 644, up to 25 pounds without limitation, AR 654, and that she could lift up to 50 pounds "occasionally", AR 654.  He opined both that she could sit for up to 8 hours per workday, AR 645, and that she could sit for up to 6 hours per workday, AR 654.  He opined both that she could stand for 7 hours and walk for 5 hours per workday, AR 645, and that her [m]aximum standing and walking capacity" was 6 hours in a workday, AR 654.

In June 2011, Dr. Robert Bernandez-Fu reviewed some of Ms. Casserd's medical records (through February 2011), AR 112-13, and concluded that she could frequently lift 10 pounds, occasionally lift up to 20 pounds, stand or walk for 6 hours in a workday, and sit for 6 hours in a workday, AR 116.  Dr. Bernandez-Fu contended, based on a subset of

ORDER – 8

the records that this court has reviewed, that Ms. Casserd had indicated that "she cannot do anything because of chronic pain," but that she still "live[d] alone and still [was] able to drive/shop and do light house chores and self care." AR 117.

**C.   There is No Substantial Evidence Supporting the ALJ's Finding that Ms. Casserd Testified Incredibly about the Disabling Effect of Her Back Pain.**

The ALJ could reject Ms. Casserd's testimony only with clear and convincing evidence. *Greger*, 464 F.3d at 972 (requiring "specific, cogent reasons" for rejecting claimant's testimony, and "clear and convincing evidence" where there is no evidence of malingering). There is no evidence in the record that Ms. Casserd is a malingerer, and the ALJ did not conclude otherwise.[3]

The ALJ found that Ms. Casserd's "medical history and examination findings" were inconsistent with her testimony about the debilitating effect of her back pain. AR 25. The R&R finds this conclusion erroneous, and the court concurs. Putting aside the evaluations of Dr. Brendel and Dr. Bernandez-Fu, there is no medical record that is inconsistent with Ms. Casserd's testimony. Ms. Casserd's reports to her physicians were invariably consistent with her testimony. None of her treating physicians expressed skepticism about her reporting. More importantly, none of them pointed to any objective medical evidence that was inconsistent with her reporting. The ALJ points to various findings that she had "normal range of motion," "full motor strength," normal results on various tests, and other objective evidence. AR 26. But there is nothing but the ALJ's own supposition to support the conclusion that this evidence was inconsistent with the pain that Ms. Casserd reported. Certainly Ms. Casserd's treating physicians pointed to no inconsistency, although they either developed or considered all of the objective evidence that the ALJ cited. Dr. Anderson is a spinal specialist, but he pointed to no objective evidence that led him to doubt Ms. Casserd's reports about her pain. Dr. Pliskowski

---

[3] The ALJ believed it significant that Ms. Casserd had not followed up on Dr. Boudreaux's recommendation to pursue rehabilitative therapy. AR 27 (citing AR 358-59). No one, including Dr. Boudreaux, opined that her inability to work was the result of her unwillingness to seek help. Dr. Boudreaux noted, at most, that rehabilitation therapy might be a helpful alternative.

ORDER – 9

treated her more frequently than any other physician, including many visits devoted entirely to pain management, and she expressed no concern that objective evidence was inconsistent with Ms. Casserd's reported pain.  Dr. Boudreaux's lengthy notes following her October 2010 examination suggest neither skepticism about Ms. Casserd's reports on her pain nor concerns about objective evidence inconsistent with those reports.  AR 476-79.  Although Dr. Brendel and Dr. Bernandez-Fu assessed Ms. Casserd's limitations as much less severe than she reported, none of them stated (much less explained) that objective evidence was inconsistent with Ms. Casserd's reporting.

The ALJ's insistence on objective evidence is inconsistent with Ms. Casserd's chief complaint – debilitating pain.  As the Ninth Circuit has noted, pain defies objective quantification.  *E.g.*, *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989) ("Unlike most medical conditions capable of supporting a finding of disability, pain cannot be objectively verified or measured.").  No one disputes that the back problems that Ms. Casserd had before and after her 2004 surgeries would be expected to produce pain, and "once the claimant produces objective medical evidence of an underlying impairment, the adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the severity of pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc).  The ALJ did just that, and thus erred.

The ALJ also concluded that Ms. Casserd's reported daily activities were inconsistent with her reporting about the impact of her pain.  AR 27.  The ALJ cited her self-employment as a life-coach, her daily routine of feeding and caring for several animals, performing physical therapy, cooking for herself, and shopping for herself.  AR 27.  The ALJ also relied on testimony and evidence that she rode her horse about twice per month, swam once or twice per week, and occasionally rode a bicycle.  AR 27.

The ALJ's conclusion that Ms. Casserd's daily activities showed that she could work is unsupportable.  Ms. Casserd testified about her daily routine.  She explained that she felt best in the morning after waking up, and during that time she fed her pets and two

ORDER – 10

horses, handled phone calls and email, and spent an hour an a half doing therapeutic exercise. AR 61. The court can only guess why the ALJ believed that Ms. Casserd's testimony that she stretched and then "d[id] an hour of physical therapy exercises," "most of [which] ha[d] been prescribed for [her]," was inconsistent with her reports of pain. Similarly, the court has no idea how the ALJ reached the conclusion that Ms. Casserd's reports that she engaged in minimal work, over the telephone, while lying on her back, AR 52, 272, undermined her reports of disabling pain.

The ALJ's conclusions about Ms. Casserd's reports of horseback riding, swimming, and biking are also unsupported by evidence. Ms. Casserd typically spent her afternoons either resting because she was "totally drained" or "really hurting," or, when she felt up to it, riding her horse or swimming. AR 62. She explained how she relied on a neighbor to lift hay bales to feed her two horses. AR 64. She explained in detail how riding her horse made her back feel better, at least temporarily. AR 66-68. Even so, she explained that she could not ride more than once every week or two because more would "be too much for [her] back." AR 67. She explained that swimming (no more than twice per week) also made her back feel better, AR 68-69, although it left her exhausted afterward. She also explained that infrequent bike rides of no more than 20 minutes made her back feel better. AR 70. She shared all of this information with her treating physicians. *E.g.*, AR 385 (reporting swimming, horseback riding, and biking to Dr. Anderson), AR 412 (reporting to physician's assistant that horseback riding helped her back), AR 478 (reporting to Dr. Boudreaux in October 2010 that a session of swimming required a week of recovery), AR 550 (reporting to Dr. Boudreaux that she felt she was improving because swimming only required a day of recovery). None of them stated that her reported activity undermined her reported pain. Indeed, Dr. Anderson thought it "unclear why she can ride horseback and bicycles without much difficult but sitting in a car causes so much pain for her," but opined that it "must be a mechanical effect relating

ORDER – 11

to the surgery or her anatomy," not an indication Ms. Casserd was exaggerating her pain. AR 388.

The R&R recommends that the court conclude that the ALJ's decision to discredit Ms. Casserd's reporting because of her reported activity was a "reasonable interpretation of the record." The court concludes otherwise. The medical providers who treated Ms. Casserd did not believe her daily activity was inconsistent with her reports of disabling pain. The ALJ neither cited evidence nor offered reasoning sufficient to support a contrary conclusion.

The court adopts the R&R to the extent it concludes that the ALJ had no basis for a final reason for disbelieving Ms. Casserd: that Ms. Casserd had no "significant barrier to sedentary work besides her own belief that her pain precludes such activity." AR 27, R&R at 8-9. The court's disposition today does not require it to address the ALJ's assessment of the extent to which Ms. Casserd's mental health limited her ability to work, or evidence regarding Ms. Casserd's mental health. It suffices to note that no physician questioned that Ms. Casserd's back pain had a physiological origin. That pain adversely impacted her mental health, which may have exacerbated the debilitating impact of her pain. No evidence supports the notion that Ms. Casserd could overcome her pain by ceasing to "believe" that it was debilitating.

There is no substantial evidence, much less clear and convincing evidence, sufficient to reject Ms. Casserd's testimony about the debilitating effect of her pain. With no adequate basis to reject Ms. Casserd's testimony, it is not strictly necessary to consider whether various physician's evaluations of Ms. Casserd's functional capacity were credible. Crediting Ms. Casserd's testimony as true, which the court must on this record, she was not capable of working. The court nonetheless considers the medical evaluations of her functional capacity, which support the same conclusion.

ORDER – 12

**D.    The ALJ Had No Sufficient Basis to Reject the Evaluations of Dr. Boudreaux and Dr. Anderson and Rely Largely on the Evaluation of Dr. Bernandez-Fu.**

As noted, Dr. Anderson opined that Ms. Casserd could not sit, stand, or walk for more than 20 to 30 minutes at time.  AR 638.  He opined that assuming she alternated at least that frequently between sitting, standing, or walking, she could do so for no more than a combined three hours per day.  AR 638.  Dr. Boudreaux stated that Ms Casserd could stand or walk for less than two hours in a workday, and that even if she alternated between sitting and standing, she could do so for no more than four hours in a workday.  AR 473.  The vocational expert who testified at Ms. Casserd's hearing opined that she could not work if she were absent once per week, or if she had to have four five-minute breaks in an hour.  AR 94.  There is no doubt that under either Dr. Boudreaux's or Dr. Anderson's assessments of her functional capacity (not to mention Ms. Casserd's own assessment of her functional capacity), Ms. Casserd could not work.

As treating physicians,[4] the ALJ could reject Dr. Anderson or Dr. Boudreaux's evaluations only in limited circumstances.  The ALJ was obligated to either point to clear and convincing evidence undermining their opinions, *Lester*, 81 F.3d at 830, or to point to a medical opinion that contradicted their opinions and "specific and legitimate reasons" supported by substantial evidence, *Garrison*, 759 F.3d at 1012.  The ALJ did not meet those obligations.

As to Dr. Boudreaux, the ALJ criticized her conclusions only because she relied on Ms. Casserd's reports on the severity of her pain.  AR 29.  With no proper basis to reject those reports, the ALJ had no basis to reject Dr. Boudreaux's opinions relying on them.

As to Dr. Anderson, the ALJ gave "little weight" to his opinions for several reasons.  AR 31.  As was the case with Dr. Boudreaux, the ALJ criticized Dr. Anderson

---

[4] The court acknowledges that it would be plausible to designate Dr. Boudreaux as an examining physician rather than a treating physician, given that she treated Ms. Casserd only once. Nonetheless, her evaluation of Ms. Casserd was at the request of Dr. Anderson, and for the purpose of assisting in Ms. Casserd's treatment.  The court's disposition today would be no different if it treated Dr. Boudreaux as an examining physician.

ORDER – 13

for relying on Ms. Casserd's reporting about the extent of her pain.  The ALJ demanded "objective evidence" to support those reports, ignoring that objective evidence established that Ms. Casserd was expected to have back pain.  The ALJ thought that Dr. Anderson erred by not concluding, as the ALJ did, that Ms. Casserd's reported daily activities were inconsistent with her reports.  And finally, the ALJ concluded that Dr. Anderson was "acting as an advocate in the claimant's request for a finding of disability." AR 31.  The ALJ reached that conclusion because when Ms. Casserd asked Dr. Anderson to provide an evaluation for use in her benefits claim, he agreed to do so, and noted "I typical put people at capable of some activity so I would not say you are totally disabled but at the next category up." AR 559.  The court has no idea how this demonstrates unacceptable "advocacy" on Dr. Anderson's part.

The R&R finds no error in the ALJ's discounting of Dr. Anderson's evaluation only because the ALJ correctly noted that Dr. Anderson erred in asserting that Ms. Casserd could "[n]ever" drive.  AR 31, 641; R&R at 13.  The court's best guess is that Dr. Anderson erred in checking this box; his evaluation otherwise mirrors Ms. Casserd's reporting.  There was no reason for Dr. Anderson to deliberately overstate the extent of Ms. Casserd's limitations; her reported limitations were more than adequate to support his conclusions.  Even if he had wanted to overstate her limitations, it makes little sense to do so by opining that she could sit for 20-30 minutes at a time but could "never" drive. But even if the court were wrong, and Dr. Anderson had deliberately overstated Ms. Casserd's driving limitations, that would not constitute sufficient evidence to reject his opinions to the extent they were grounded in Ms. Casserd's reporting.  The ALJ apparently agrees.  He gave significant weight to Dr. Bernandez-Fu's evaluation, even though it contained the erroneous statement that the record contains evidence that Ms. Casserd "cannot do anything because of chronic pain . . . ." AR 117.  If a single error was no basis to reject Dr. Bernandez-Fu's evaluation, it was no basis to reject Dr. Anderson's evaluation.

ORDER – 14

The only medical evidence supporting the ALJ's point of view are the evaluations of Dr. Brendel, an examining physician, and Dr. Bernandez-Fu, a non-examining physician.  The ALJ, to her credit, appears to have recognized that Dr. Brendel's evaluation had no basis in fact.  No one believes, as Dr. Brendel did, that Ms. Casserd could sit all day.  The ALJ thought that Ms. Casserd's "MRI findings justif[ied] limitations in excess of those opined by Dr. Brendel . . . ."  This court would go further: the entirety of the record demonstrates limitations in excess of those that Dr. Brendel assessed.

Ultimately, the opinion of Dr. Bernandez-Fu was the only opinion the ALJ gave "significant weight."  AR 30.  The ALJ found that opinion, which Dr. Bernandez-Fu supported solely with the incorrect statement that Ms. Casserd had testified that she "cannot do anything" and a citation of the same household activities that the court has already found are wholly consistent with Ms. Casserd's reports of disabling pain, AR 117, was controlling.  The court rules that reliance on a single, cursory opinion from a non-examining physician is not a "specific and legitimate" reason to reject the evaluations of all of Ms. Casserd's examining physicians.

**E.    Crediting the Improperly Rejected Evidence as True, It Is Appropriate To Remand for an Award of Benefits.**

Where an ALJ lacks a sufficient basis to reject either medical evidence or testimony from a disability claimant, the court may credit that testimony as true.  *Garrison*, 759 F.3d at 1020.  Where the record is fully developed, and the improperly rejected or discounted testimony establishes that the claimant is disabled, the court has discretion to remand for an award of benefits rather than for a new hearing before an ALJ.  *Id.*

In this case, the court concludes that the record is fully developed and that it is appropriate to credit as true Ms. Casserd's descriptions of the debilitating effect of her pain as well as the evaluations of Dr. Anderson and Dr. Boudreaux.  Her description and

ORDER – 15

her physicians' evaluations demonstrate that she cannot perform jobs that exist in significant numbers.  The court will remand this action to the SSA for an award of benefits.

### IV.   CONCLUSION

For the reasons stated above, the court DECLINES TO ADOPT the R&R, REVERSES the July 27, 2012 decision of the administrative law judge, and REMANDS this action to the SSA with instructions to award disability benefits based on an onset date of April 1, 2009.

The clerk shall enter judgment for Ms. Casserd and ensure that Judge Tsuchida receives notice of this order.

DATED this 17th day of December, 2014.

_____

The Honorable Richard A. Jones
United States District Judge

ORDER – 16